**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
- SAN ANTONIO DIVISION -**

| | | |
|---|---|---|
| **GERARDO MALDONADO, JR.** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:19-cv-01390** |
| | § | **(JURY DEMANDED)** |
| **THE GEO GROUP, INC.** | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT & JURY DEMAND

**NOW COMES, GERARDO MALDONADO, JR.,** Plaintiff herein, complaining of and about **THE GEO GROUP, INC.** and files this, his Original Complaint and Jury Demand , and would show unto the court as follows:

### Section 1

### Introduction

**1.01**   This is an employment discrimination case for money damages brought by Mr. Gerardo Maldonado against his former employer.

### Section 2

### Parties

**2.01**   Plaintiff, **GERARDO MALDONADO, JR.,** (hereinafter "Mr. Maldonado" or "Plaintiff") is a resident of San Antonio, Bexar County, Texas.

**2.02**   Defendant, **THE GEO GROUP, INC.** (hereinafter referred to as "Geo" or "Defendant") is an out-of-state  corporation doing business in the State of Texas, and can be served with process by serving its registered agent at the following address:

Corporate Creations Network, Inc.
5444 Westheimer #1000
Houston, Texas 77056

## Section 3

## Jurisdiction & Venue

**3.01**   This court has federal-question jurisdiction because this action arises under the laws of the United States, 28 U.S.C. § 1331,: 42 U.S.C. § 1983 and the Age Discrimination in Employment Act, 29 U.S.C. § 626(c)(1).

**3.02**   This court has diversity jurisdiction because the suit involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.00 28 U.S.C. § 1332(a).

**3.03**   Venue is proper in this cause in the Western District of Texas pursuant to 28 U.S.C.§1391(a)(2) because all or a substantial part of the events which gave rise to this cause of action occurred in the Western District of Texas.

## Section 4

## Conditions Precedent

**4.01**   All conditions precedent to jurisdiction under Title VII, 42 U.S.C. § 2000 e-5(f)(3) have occurred or been complied with, to wit: (a) A charge of employment discrimination was concurrently filed with the EEOC within 180 days of the commission of the unlawful employment practice; a Notification of Right to Sue was issued by the EEOC; this Complaint has been filed within 90 days of receipt of the Right to Sue letter.  Said charge was dually or jointly filed with the Texas Workforce Commission, Civil Rights Division as well.

**Section 5**

**Factual Allegations**

**5.01**   Mr. Maldonado was employed by private prison contractor, The GEO Group, Inc. ("GEO"), as Director of Operations of the Central Regional Office, starting in September 2012.

**5.02**   Mr. Maldonado's oversight as Director of Operations included from a high of 14 facilities to a low of 8 facilities during his tenure.

**5.03**   His base salary was $160,820.00.

**5.04**   As part of GEO's fringe benefits, Mr. Maldonado was afforded with health insurance (medical, dental and vision),  a 401K, stock options, deferred compensation, disability insurance, and professional liability insurance

**5.05**   Mr. Maldonado's total compensation came close to $240,000.00 a year.

**5.06**   Each bonus was 15% of his based salary.

**5.07**   GEO gave Mr. Maldonado's job performance bonuses for years 2012-2018.

**5.08**   Defendant articulated a false reason when it terminated Mr. Maldonado.

**5.09**   In a November 13, 2018, memo, GEO's Central Region, Regional Vice President, James Black, references an incident "**at** our Ector County facility involving a USMS detainee who took his own life with an Officer's weapon."

**5.10**   The truth is that the unfortunate suicide occurred at an **off-site community hospital** where he was being watched by two GEO guards and not a GEO facility.

**5.11**   One of the guards fell asleep, a violation of GEO policy.

**5.12**   After falling asleep, the guard's his gun was removed by the detainee.

**5.13**   The GEO guard or hallway officer was required to maintain visual contact on the guard inside the hospital room with the detainee.

**5.14**   The hallway GEO guard failed to maintain visual contact in this instance as required by GEO policy.

**5.15**   It is undisputed Mr. Maldonado is a Mexican-American male.

**5.16**   It is undisputed Mr. Maldonado was age 61 at the time he was terminated.

**5.17**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2012.

**5.18**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2013.

**5.19**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2014.

**5.20**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2015.

**5.21**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2016.

**5.22**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2017.

**5.23**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2018.

**5.24**   It is undisputed that Mr. Maldonado was qualified to perform his job duties in 2019.

**5.25**   It is undisputed Mr.Maldonado suffered an adverse personnel action when he was terminated by GEO on November 13, 2018.

**5.26**   It is undisputed that the decision-maker, was Mr. James Black.

**5.27**   Based on information and belief, the decision-maker, Mr. James Black, was age 55, 6 years younger than Mr. Maldonado.

**5.28**   Mr.  Maldonado was replaced by a younger person.

**5.29**   Younger, Anglo Directors were treated better when their actual conduct violated policy, including:

**5.30**   Frank Strada and Joseph Strada, Directors of Operation (Western Region) - (1)

   (1)     Both oversaw Northeast New Mexico facility where an inexperienced guard opened a cell door to a violent murder.

   (2)     The guard was taken hostage.

   (3)     Special housing unit inmates were released.

   (4)     A riot occurred.

   (5)     Frank and Joseph Strada were not terminated.

   (6)     Warden Mark Bowen was not terminated.

   (7)     At the time of the incident above, Frank Strada was younger than age 61.

   (8)     At the time of the incident above, Joseph Strada was younger than age 61.

**5.31**   Frank Strada, Director of Operations (Western Region)

   (1)     Oversaw  the Aurora ICE Processing Center where detainees espaced on April 15, 2017.

   (2)     Aurora ICE Processing Center had outbreak of mumps and chicken pox.

   (3)     The Aurora ICE Processing Center was in violation of numerous ICE policies, according to Department of Homeland Security inspection.

   (4)     Department of Homeland Security had concerns about poor health care at Aurora ICE Processing Center.

   (5)     Multiple deaths and suicided occurred at the Aurora ICE Processing Center.

   (6)     Frank Strada was not terminated.

   (7)     At the time of the incident, Frank Strada was younger than age 61.

**5.32**   Ken Cauley, Director of Operations in the Eastern Region.

   (1)     Oversaw facilities where several escapes occurred.

(2)    Oversaw facilities where detainees committed suicide.

(3)    Oversaw facilities where inmates committed suicide.

(4)    At the time of the incident, Ken Cauley was younger than age 61.

**5.33**    As a Mexican-American Director of Operations, Mr. Maldonado was excluded by GEO from consideration for a Regional Vice President position, a promotion opportunity.

**5.34**    Mr. Maldonado had to express interest and speak with a high-ranking GEO official to obtain an interview.

**5.35**    Although he was interviewed, Mr. Maldonado did not get the job.

**5.36**    Based on information and belief, the job was given to a white male.

**5.37**    Based on information and belief, the job was given to a younger male who was in his 40's.

**5.38**    Based on information and belief, the job was given to a younger male who was in his 50's.

**5.39**    Shortly before his termination, Mr. Maldonado was scheduled to have cataract surgery.

**5.40**    According to Johns Hopkins University, cataracts are generally age-related, affecting vision after the age of 60.

**5.41**    On November 7, 2018, GEO granted Mr. Maldonado permission to go home to San Antonio to pick up medications for a medical condition.  At the time, Mr. Maldonado was working in Odessa, Texas.

**5.42**    Shortly thereafter, on November 13, 2018, GEO terminated Mr. Maldonado.

**5.43**    GEO targeted Mr. Maldonado because he left work to pick up medication from his home in San Antonio.

**5.44**   Mr.  Maldonado was one of the oldest GEO employees in his department.

**5.45**   Mr.  Maldonado was one of the longest-tenured employees in his department.

**5.46**   On December 17, 2018, Mr. Maldonado perfected his charge of discrimination with the EEOC and the Texas Workforce Commission, Civil Rights Division.

**5.47**   In his perfected charge, Mr. Maldonado alleges his termination by GEO was motivated by national origin, age, and disability discrimination under state and federal law.

**5.48**   In his perfected charge, Mr. Maldonado alleges his termination by GEO was also retaliatory under state and federal law.

**5.49**   GEO's termination of Plaintiff was an adverse employment action motivated by malice and/or reckless indifference to Plaintiff's state-created rights under the Texas Human Rights Act as well as federal law, including Title VII, the ADEA, and the ADA.

## Section 6

## Causes of Action

**6.01**   Mr. Maldonado  asserts that GEO  violated Chapter 21 of the Texas Labor Code in that his termination was motivated by unlawful discrimination, including national origin, age, and disability discrimination.

**6.02**   Mr. Maldonado  asserts that GEO  violated Chapter 21 of the Texas Labor Code in that his termination was retaliatory as per Tex. Lab. Code 21.055.

**6.03**   Punitive damages are recoverable for willful violations of the Texas Human Rights Act.  See Tex. Lab. Code 21.2585 (d).

**6.04**   Pleading in the alternative, Mr. Maldonado  asserts that GEO  violated Title VII in that his termination was motivated by unlawful discrimination, including national origin, and retaliation.

**6.05** Pleading in the alternative, Mr. Maldonado asserts that GEO violated the Age Discrimination in Employment Act (ADEA) in that his termination was motivated by unlawful discrimination, including, age discrimination, and retaliation. But for the discrimination, Mr. Maldonado would not have been terminated by GEO.

**6.06** Pleading in the alternative, Mr. Maldonado asserts that GEO violated the Americans with Disabilities Act (ADA) in that his termination was motivated by unlawful discrimination, including disability discrimination, and retaliation. Plaintiff anticipates he will be entitled to recover punitive damages in this case.

### Section 7

### Damages

**7.01** As a result of acts and/or omissions as set forth above, Plaintiff sustained the following damages and seeks the following under state and federal law:

    (a)    Reinstatement;

    (b)    Punitive damages;

    (c)    Back pay;

    (d)    Front pay;

    (e)    Past and future emotional pain;

    (f)    Past and future suffering;

    (g)    Past and future inconvenience;

    (h)    Past and future mental anguish;

    (i)    Past and future loss of enjoyment of life;

    (j)    Past and future other non-pecuniary damages; and

    (k)    Reasonable attorney's fees.

**7.02**   Compensatory Damages, including but not limited to:

   (a)   Injury to Professional Standing;

   (b)   Injury to Character and Reputation;

   (c)   Job Search Expenses;

   (d)   Lost Earning Capacity in Past and Future;

   (e)   Other pecuniary losses;

   (f)   Non-Pecuniary losses;

   (g)   Interest on Front Pay;

   (h)   Interest on Back Pay;

   (i)   All Lost Benefits Under the employment relationship;

   (j)   Pre-judgment interest;

   (k)   Post-judgment interest;

   (l)   Cost of court/suit;

   (m)   Reasonable expert fees;

   (n)   Reasonable attorney's fees arising from representation in this matter,

including trial preparation, trial, post-trial, pre-appeal work, appellate work (Fifth Circuit and

U.S. Supreme Court), post-judgment discovery and collection on the judgment if necessary;

and

**7.03**   Defendant has acted with malice or reckless indifference to Plaintiff's rights.

Defendant, by engaging in the aforementioned acts and/or in authorizing and/or ratifying

the aforementioned acts, engaged in willful, malicious, intentional, and oppressive conduct

and acted with willful and conscious disregard, or alternatively reckless disregard or

indifference of the rights, welfare, and safety of Plaintiff, therefore justifying the award of

punitive and exemplary damages in an amount to be determined at trial.  Therefore, Plaintiff additionally brings suit for punitive damages and exemplary damages.

**7.04**   Any such other relief to which Plaintiff may be justly entitled.

### Section 8

### <u>Jury Trial</u>

**8.01**   Plaintiff demands a jury trial in this matter.

### Section 9

### <u>Prayer</u>

**9.01  WHEREFORE   PREMISES CONSIDERED**, Plaintiff  prays that Defendant be cited to appear and answer in this cause, and that upon final trial hereof, Plaintiff recovers judgment against Defendant for his actual/compensatory/punitive damages in amounts within the jurisdictional limits of this Court, as plead above, and for all other relief at equity for which he may show himself justly entitled.

Respectfully submitted,

Mauro F. Ruiz
State Bar No. 24007960
Federal ID. 23774
118 West Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203
mruiz@mruizlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

OF COUNSEL:
**RUIZ LAW FIRM, P.L.L.C.**
118 West Pecan Blvd.
McAllen, Texas 78501
Telephone:    (956) 259-8200
Telecopier:    (956) 259-8203